Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

JS 6

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5745 | **DATE** | 9/26/2001 |
| **CASE TITLE** | U.S.A., ex rel. David Winsor vs. Anthony Suggs, Warden Pontiac Correctional Center | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Winsor's motions for substitution (Docs. 40-1, 42-1) are granted. His motion for appointment of counsel (Doc. 32-1) is denied, and his petition for habeas corpus is denied. (Doc. 42-2.) This case is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 27 2001 date docketed | 48 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/26/2001 date mailed notice | |
| FTV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., ) | | |
| DAVID WINSOR, ) | | |
| ) | | |
| Petitioner, ) | | |
| ) | | |
| v. ) | No. 00 C 5745 | |
| ) | | |
| ANTHONY SUGGS, Warden ) | Judge Rebecca R. Pallmeyer | |
| Pontiac Correctional Center, ) | | |
| ) | | |
| Respondent. ) | | |

### MEMORANDUM OPINION AND ORDER[1]

Following a bench trial in the Circuit Court of Cook County, Petitioner David Winsor was convicted of residential burglary and sentenced to 11 years in prison. Now incarcerated at the Danville Correctional Center, Winsor brings the instant petition for a writ of habeas corpus raising the following claims: (1) he was seized in violation of his Fourth Amendment rights; (2) his presence to stand trial on one count was the result of an illegal arrest on another count; and (3) he was denied the effective assistance of trial counsel. Because Winsor's Fourth Amendment claims are not cognizable on habeas review and because this court finds that he has procedurally defaulted his claim for ineffective assistance of counsel, Winsor's petition for writ of

---

[1] Winsor has brought two motions for substitution of the parties to reflect the correct respondent's name. Because the current warden of Danville Correctional Center is Blair J. Leibach, not Anthony Suggs, Winsor's motion is granted and Leibach is substituted as the Respondent in this case. (Docs. 40-1, 42-1.)

habeas corpus is denied.[2]

## FACTUAL BACKGROUND [3]

The facts presented at trial established that, at 2:10 p.m. on August 5, 1996, Norma Vera, who resided with her parents and brother in a first floor apartment at 1646 West Albion Avenue in Chicago, heard a window break. (Exhibit B, Respondent's Answer, at 5.) She testified that she ran into the kitchen and saw a man standing inside with his back to her. (*Id.*) She yelled and the man turned slightly, affording her a view of him for a couple of seconds. (*Id.*) Vera testified that the man was wearing a blue T-shirt with black pants and that she was able to see half of his face before he placed his arm over it and fled from the kitchen. (*Id.*) She then called the police and reported the incident. (Exhibit C, Respondent's Answer, Brief and Argument for Appellee, at 4.)

Later that day, after Winsor had been taken into custody, Vera positively

---

[2] In addition to asking this court to grant his petition, Winsor has moved for appointment of counsel. Given the court's dismissal of Winsor's petition, however, the motion for appointment of counsel is denied as moot. (Doc. 32-1.)

[3] In reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254, a federal court presumes that the facts found by state courts are correct. 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981). A petitioner has the burden to establish, by convincing evidence, that a state court's factual determinations are erroneous. *See United States ex rel. Green v. Greer*, 667 F.2d 585, 589 n. 6 (7th Cir. 1981). Winsor does not challenge the Illinois Appellate Court's factual findings (*People v. Winsor*, No. 1-97-2662, Ill. App. Ct., 1st Dist., June 18, 1999, at 1-2), but because that court did not explicate such findings in its two page Order, this court adopts a combination of the facts set forth in the parties' appellate briefs. (Exhibit B, Answer to Petitioner's Petition for Writ of Habeas Corpus (hereinafter "Respondent's Answer"), Brief and Argument for Appellant on Direct Appeal; Exhibit C, Respondent's Answer, Brief and Argument for Appellee on Direct Appeal.)

identified Winsor as the man she saw. (*Id.*) At trial, however, when Vera was first asked whether she saw the man whom she had seen in her kitchen, she replied that she did not see him. (Exhibit B, Respondent's Answer, at 5.) The following exchange then occurred:

> Q: In court today, do you see him?
>
> The Court: Stand up.
>
> Q: Look around and see if you see him in court today?
>
> A: Yes, he's over there.

(*Id.*)

Another witness, David Garcia, testified that on the day in question, he was at his home at 1664 West Farwell Street, around 2:30 p.m., when he heard someone trying to get into his front door. (*Id.* at 6.) He opened it and saw Winsor, who told Garcia he had been looking for him to inquire about a car Garcia was selling. (*Id.*) Garcia explained that he was not selling a car and Winsor left. (*Id.*) Garcia then heard Winsor ask for David Garcia at another apartment. (*Id.*) Garcia claimed that he looked out of his window sometime later and saw Winsor, who was holding a screwdriver, jump over a fence leading up to the building next door, at 1668 West Farwell. (*Id.*) Garcia saw Winsor open a small second floor window (neither party explains how Winsor reached this second floor window) and called the police. (*Id.* at 7.)

Detective John Roberts testified that he went to 1664 West Farwell in response

to the call and spoke to Garcia. (*Id.* at 4.) Garcia told Roberts that the suspect had gone to the second floor apartment next door. (*Id.*) Roberts then went to the back door of 1668 West Farwell and observed that the transom window above the door had been opened and an entry had been made. (Exhibit B, Respondent's Answer, at 7.) Roberts then went to the front of the building and found Winsor leaving Apartment 2C with paper currency and coins in his hands. (*Id.*) A box containing computer equipment was sitting on the floor behind Winsor. (*Id.*) Roberts placed Winsor under arrest. (*Id.*)

Jason Silverman, the tenant in Apartment 2C, testified that his apartment looked different when he returned that day than it had looked when he left that morning (the record before the court does not elaborate on Silverman's comparison). (*Id.*) The state also introduced evidence that Winsor had been previously convicted of (1) two separate incidents of Attempted Residential Burglary, for which he was sentenced to three years and two years respectively; and (2) Possession of a Controlled Substance, for which he was sentenced to two years. (Exhibit C, Respondent's Answer, at 5.)

After the prosecution rested, Officer Thomas Blatz testified on behalf of Winsor that on the day in question, he and his partner, Officer Tavares, were called to "approximately" 1664 West Farwell to respond to a burglary in progress. (Exhibit B, Respondent's Answer, at 8.) As they approached the building, Blatz saw Winsor coming out of a building in that vicinity. (*Id.*) According to Blatz, Winsor *was not* in custody at that time and Blatz himself, not Roberts, took Winsor into custody and then

4

turned him over to Officers Roberts, Rucks, and Palczynski so that they could transport Winsor to the police station.[4] (*Id.*) Apart from the "burglary in process" call, Blatz does not appear to have explained his reason for having taken Winsor into custody. In rebuttal, the prosecution offered the testimony of Officer Tavares, who, disputing Blatz's version of events, claimed that Winsor was already in custody when he and Blatz arrived on the scene and they merely transported Winsor to the station. (*Id.* at 10.)

Winsor testified on his own behalf that he was in the area of 1664 West Farwell on the afternoon in question, inquiring about a car for his boss, Mr. Hirington. (*Id.* at 8.) According to Winsor, Hirington sometimes purchased and rebuilt cars. (*Id.*) He had sent Winsor to the area to inquire about purchasing a 1987 Chevrolet Cavalier from Mr. Garcia. (*Id.*) According to Winsor, Garcia informed him he was not selling the car but told him to check next door. (*Id.* at 9.) Winsor went to the next entrance and saw the name Garcia on the bell. (*Id.*) After ringing the bell and getting no answer, he left the building and walked through a gangway onto Farwell, where two officers pulled him over and arrested him. (*Id.*) Once at the station he was turned over to Officer Roberts. (*Id.*) Winsor denied going to either Vera's or Silverman's apartments. (*Id.*)

---

[4] Prior to trial, Winsor's trial counsel (John Conniff of the Cook County Public Defender's Office) moved on Winsor's behalf to quash Winsor's arrest. The court held a hearing on this motion and heard testimony from Winsor, Officer Roberts, Officer Rucks, Officer Palczynski, but not Officer Blatz. After the hearing, the court denied the motion. Conniff did not, at any point during or after the trial, request a rehearing on the motion to quash.

Winsor was found not guilty of burglarizing Jason Silverman's apartment but guilty of burglarizing the Vera apartment and sentenced to 11 years in the Illinois Department of Corrections. (*Id.* at 10.)

## PROCEDURAL HISTORY

Winsor, represented by Denise R. Avant (also of the Cook County Public Defender's Office), appealed his conviction to the Illinois Appellate Court, First District. His sole claim on appeal was that Vera's identification of him was "vague, doubtful and uncertain," and, therefore, he was not proven guilty beyond a reasonable doubt. (Exhibit D, Respondent's Answer, *People v. Winsor*, No. 1-97-2662, Ill. App. Ct., 1st Dist., June 18, 1999, at 1.) On June 18, 1999, the Appellate Court affirmed Winsor's conviction and sentence in a two-page "Summary Order." (*Id.*) Winsor filed a timely *pro se* petition for leave to appeal to the Illinois Supreme Court, raising the following issues: (1) he was not proven guilty beyond a reasonable doubt; (2) he was denied the effective assistance of trial counsel because his counsel failed to file pre-trial motions;[5] and (3) he was denied the effective assistance of appellate counsel because appellate counsel only raised one issue on direct appeal despite numerous constitutional violations. (Exhibit E, Respondent's Answer.) On October 6, 1998, the Illinois Supreme Court denied Winsor's petition. (Exhibit F, Respondent's Answer.)

On December 8, 1998, Winsor filed a timely *pro se* petition for post-conviction

---

[5] It is not entirely clear from Winsor's petition for leave to appeal what pre-trial motions he believes his counsel should have filed. The court notes that, according to the record, Winsor's trial counsel, John Conniff, did bring a pre-trial motion to quash the arrest, but the motion was denied, *see supra note 4*.

relief in the Circuit Court of Cook County, raising the following claims: (1) he was illegally seized in violation of the Fourth Amendment because he was not in violation of any laws at the time he was seized; (2) he was not identified beyond a reasonable doubt; (3) he was denied the effective assistance of trial counsel because his counsel (a) failed to request a rehearing on the motion to quash arrest, (b) failed to file pre-trial motions (again, Winsor does not specify the pre-trial motions he believes should have been filed), (c) did not challenge the admissibility of Vera's identification, and (d) failed to call any police officer to testify;[6] (4) his right to due process was violated because, on direct appeal, the State submitted a reply brief that incorrectly stated that Winsor moved to suppress the identification but failed to raise the issue that the police tainted Vera's positive identification; and (5) his presence to stand trial on the burglary charge of Vera's home was the direct result of his unlawful arrest on the charge of burglarizing Silverman's home. (Exhibit G, Respondent's Answer.)

On January 7, 1999, the Circuit Court dismissed the petition as frivolous and patently without merit. (Exhibit H, Respondent's Answer, *People v. Winsor*, No. 96 CR 21179-01, January 7, 1999.) Winsor appealed that dismissal to the Illinois Appellate Court, claiming only ineffective assistance of trial counsel for his counsel's failure to request a rehearing of the motion to quash. (Exhibit I, Respondent's Answer.) On October 12, 2000, the Illinois Appellate Court affirmed the dismissal of Winsor's post-

---

[6] The court notes that this claim is clearly contradicted by the record. In fact, in his Brief and Argument on Direct Appeal, Winsor stated that Conniff called Officer Blatz to testify on his behalf. (Exhibit B, Respondent's Answer, at 8.)

7

conviction petition. (Exhibit K, Respondent's Answer.) The court concluded:

> A review of the record shows that all facts supporting defendant's claim of ineffective assistance of trial counsel appear on the record and could have been raised on direct appeal, but were not. Therefore defendant's claim is waived. Moreover, because defendant's post-conviction petition contains no allegations of ineffective assistance of appellate counsel, defendant has also waived any such claim.

(*Id.*) Winsor did not appeal this decision to the Illinois Supreme Court.

On November 2, 2000, Winsor filed the instant petition for writ of habeas corpus, raising the following three issues: (1) he was seized in violation of the Fourth Amendment; (2) his presence to stand trial on one count was the result of an illegal arrest on another count; and (3) he was denied the effective assistance of counsel because his trial counsel failed to file any pre-trial motions or object to the manner in which the trial judge allowed the eyewitness to identify Winsor in court.

## DISCUSSION

### A. Standard of Review

Under § 2254 of the Anti-Terrorism and Effective Death Penalty Act, a prisoner is entitled to a writ of habeas corpus if he is being held under a state court judgment obtained in violation of the Constitution. 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1504 (2000). The federal court will not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless that state decision: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *Boss v. Pierce*, ___ F.3d ___, No. 98-3665, 2001 WL 995354, at *3 (7th Cir. Aug. 31, 2001); *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000).

B.  **Procedural Default**

Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999). In addition, a habeas petitioner is procedurally barred from raising claims in federal habeas court that were not raised in the state court proceedings. *See O'Sullivan*, 526 U.S. at 848. Procedural default can occur where: (1) the petitioner presents an issue within a petition never presented to the state court for review, *see Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995); (2) the petitioner failed to properly and fairly raise the federal element of an issue now presented on petition first to the state court for review, *see Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir. 1992); or (3) the state court previously disposed of an issue now presented on petition on an independent and adequate state law ground, such as a state procedural bar. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). These requirements are "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Federal courts may review defaulted claims only if: (1) the petitioner shows

9

cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. *See Spreitzer v. Schomig*, 219 F.3d 639, 647-48 (7th Cir. 2000).

C.  **Winsor's Petition**

Winsor raises three claims for habeas relief. Respondent argues that Winsor's first and second habeas claims are non-cognizable because they allege violations of the Fourth Amendment. It argues that Winsor's third claim, ineffective assistance of trial counsel, is procedurally defaulted. The court, having reviewed both Winsor's Motion in Opposition to Respondents [sic] Request for Denial of Habeas Corpus ("Motion in Opposition") and Supplemental Motion in Opposition to Respondents [sic] Motion to Dismiss ("Supplemental Motion"), considers Respondent's two arguments in turn.

1.  **Winsor's Fourth Amendment Claims**

In his first and second claims, Winsor alleges that he was "siezed [sic] in violation of his Fourth Amendment rights" and that his "presence to stand trial on Count Two [of his Indictment] was a result of illegal seizure on Count One." Winsor does not dispute that these two claims are grounded in the Fourth Amendment.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that a state prisoner raising a Fourth Amendment claim is not entitled to habeas corpus relief if the state has provided the prisoner "an opportunity for full and fair litigation" of his claim. *See Terry v. Martin*, 120 F.3d 661, 663 (7th Cir. 1997) (citing *Stone*, 428 U.S. at 482); *United States ex rel. McDonald v. Page*, 108 F. Supp. 2d 993 (N.D. Ill. 2000).

In *Weber v. Murphy*, a 1994 decision, the Seventh Circuit established a three-pronged standard for determining whether a petitioner received an opportunity for full and fair litigation of a Fourth Amendment claim: (1) the petitioner must have clearly informed the state court of the factual basis for the claim and argued that those facts violate his Fourth Amendment rights; (2) the state court must have carefully and thoroughly analyzed the facts; and (3) the state court must have applied the proper constitutional case law to the case. 15 F.3d 691, 694 (7th Cir.1994), *cited in United States ex rel. Anderson v. Clark*, No. 99 C 3008, 2000 WL 1700127, at *5 (N.D. Ill. Nov. 13, 2000).

That same year, the Eighth Circuit rejected the *Weber* standard. *See Willett v. Lockhart*, 37 F.3d 1265, 1272 (8th Cir. 1994) ("We reject this three-part test as a subversion of the *Stone* rule. . . . [I]f the *Stone* rule permitted this sort of inquiry into state court findings of fact and conclusions of law on a federal petition for writ of habeas corpus, then it seems to us *Stone* might just as well never have been written, for such an application would result at best in only marginal limitation upon habeas review of Fourth Amendment claims."). In response, the Seventh Circuit clarified *Weber*. *See Turentine v. Miller*, 80 F.3d 222, 225 (7th Cir. 1996) (refusing to review the petitioner's Fourth Amendment claims because of his "failure to clearly present them to the Indiana Court of Appeals.") The court noted that *Weber* was not "a subversion of the *Stone* rule;" to the contrary, it merely "sought to explicate what the Supreme Court recognized in *Stone* as a very narrow exception to the general rule that a habeas petitioner may not bring Fourth Amendment claims." *Id.* at 225. The *Turentine* court

emphasized the Seventh Circuit's position that "habeas review of Fourth Amendment claims is reserved for instances where the state court made an egregious error (e.g., failed to apply Supreme Court precedent directly on point after the argument was clearly presented), thus effectively depriving the petitioner of the ability to vindicate his federal rights in state court." *Id.* at 226.

District courts within the Seventh Circuit still apply *Weber*'s three-pronged standard when reviewing Fourth Amendment habeas claims. *See, e.g., United States ex rel. Davis v. Cowan*, 89 F. Supp. 2d 1007 (N.D. Ill. 1999); *United States ex rel. Galvan v. Gilmore*, 997 F. Supp. 1019 (N.D. Ill. 1998); *United States ex rel. Brookhouse v. Ahiton*, 97 C 642, 1997 WL 445936 (N.D. Ill. Aug. 1, 1997). In these cases, however, the petitioner had raised his Fourth Amendment claim in the Illinois Appellate Court; thus, the *Weber* framework was applicable. The court has found one case involving an analysis of a Fourth Amendment habeas claim where the petitioner did not bring the claim to the attention of the state courts. *See U.S. ex rel. Keys v. Barham*, No. 00-2536, 2001 WL 40808 (N.D. Ill. Jan. 16, 2001). In *Keys*, which cited to *Turentine* and not *Weber*, the court concluded that:

> [i]n this case, although Keys had a full and fair opportunity to present his Fourth Amendment arguments to the state courts, for whatever reasons, he did not take advantage of it. Thus, Keys has not satisfied the threshold requirement of clearly presenting his Fourth Amendment claims to the state courts, and federal collateral review of his Fourth Amendment claims is foreclosed by *Stone*.

2001 WL 40808, at *4.

Winsor's case is essentially no different from the petitioner in *Keys*. To be sure,

he did bring his substantive Fourth Amendment claim to the attention of the trial court in his petition for post-conviction relief; but he never "clearly presented" the claim to either the Illinois Appellate Court or the Illinois Supreme Court. For this reason, he is not entitled to federal habeas corpus review of these Fourth Amendment claims.

The court next addresses the issue of procedural default. In doing so, it acknowledges that Respondent did not raise a procedural default defense directed specifically to Winsor's first two habeas claims; yet, because the court finds no indication that the Respondent has either explicitly or implicitly waived such a defense, it will address the issue *sua sponte*. *See United States ex rel. Porter v. Schomig*, 98 C 7388, 1999 WL 1046433, at *4 (N.D. Ill. Nov. 10, 1999) ("[T]he court may raise the procedural default defense *sua sponte*, unless the State implicitly or explicitly waived the defense.") (citing *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir.1998)).

In order to have fully presented his claims to the Illinois courts, thereby avoiding procedural default, Winsor had to have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 1729 (1999). As noted above, Winsor did not mention the Fourth Amendment in his direct appeal. The only instance, prior to the instant Petition, where Winsor raised his Fourth Amendment claims was in his post-conviction petition. He did not

13

raise a Fourth Amendment argument in his appeal to the Illinois Appellate Court, and did not appeal that court's decision to the Illinois Supreme Court at all. Therefore, Winsor has procedurally defaulted on these Fourth Amendment claims.

This court may still review these defaulted claims if: (1) Winsor shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. *See Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 1591 (2000); *see also Wainwright v. Sykes*, 433 U .S. 72, 87 (1977). With respect to "a fundamental miscarriage of justice," courts essentially require "new evidence of innocence." *United States ex rel. Bell v. Pierson*, __ F.3d __, No. 00-4296, 2001 WL 1029282, at *5 (7th Cir. Sept. 10, 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). Winsor has offered no arguments as to why he failed to bring his Fourth Amendment claims to the Illinois Supreme Court in the direct appeal process or to the Illinois Appellate Court and Illinois Supreme Court in the post-conviction appeal process. Nor does he point to any "new evidence" that would bring him within the "'narrow class of cases' which implicate[] a fundamental miscarriage of justice." *Bell v. Pierson*, 2001 WL 1029282, at *5.

### 2. Ineffective Assistance of Counsel

In the third claim of his Petition, Winsor argues that his trial counsel was ineffective because he neither (1) objected when the trial judge told the identifying

14

witness to "stand up;" nor (2) filed any pre-trial motions. Respondent contends that Winsor has procedurally defaulted on both aspects of this claim. The court agrees.

Prior to the instant Petition, Winsor had not challenged his trial counsel's failure to object to the trial judge's request that the identifying witness "stand up." He has, therefore, undoubtedly defaulted on the first aspect of his ineffective assistance of counsel claim. As for the second aspect, upon dismissing Winsor's appeal of the denial of his petition for post-conviction relief, the Illinois Appellate Court stated:

> A review of the record shows that all facts supporting defendant's claim of ineffective assistance of trial counsel appear on the record and could have been raised on direct appeal, but were not. Therefore defendant's claim is waived. Moreover, because defendant's post-conviction petition contains no allegations of ineffective assistance of appellate counsel, defendant has also waived any such claim.

As noted earlier, when a state court determines that a petitioner waives a claim in state court, that waiver is an "independent and adequate state ground that bars federal habeas relief." *United States ex rel. Anderson v. Clark*, No. 99 C 3008, 2000 WL 1700127, at *4 (N.D. Ill. Oct. 24, 2000) (citing *Harris v. Reed*, 489 U.S. 255, 258 (1989)); *see also United States ex rel. Jefferson v. Welborn*, No. 98 C 3342, 2000 WL 1644366 (N.D. Ill. Oct. 24, 2000). In *Jefferson*, the petitioner claimed on direct appeal and in his habeas corpus petition that the State withheld evidence favorable to his defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). 2000 WL 1700127, at *4. The Illinois Appellate Court deemed the *Brady* claim waived because the petitioner had failed to raise the issue in his post-trial motion. *Id.* The district court refused to consider the *Brady* claim on habeas review, concluding that: "[t]he procedural bar

15

employed by the Illinois Appellate Court to dispose of [the petitioner's] claim is an independent and adequate basis for disposition of [the petitioner's] claim." *Id.* Similarly, here, the court concludes that the Illinois Appellate Court's waiver finding is an independent and adequate basis for disposition of the second aspect of Winsor's IAC claim.[7]

Again, the court may still review these defaulted claims if: (1) Winsor shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. *See Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 1591 (2000); *see also Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Winsor does not offer any new evidence on this claim which would establish his "actual innocence." He does, however, alleged a "cause" for the default of his ineffective assistance of counsel claim: in his Petition, Winsor states that his appellate counsel, a member of the same office as his trial counsel, refused to raise an ineffective assistance of counsel claim on direct appeal. While ineffective assistance of counsel, if proven, can constitute "cause" for the purpose of procedural default, *see United States ex rel. Faircloth v. Sternes*, No. 00 C 1346, 2000 WL 1847627, at *6 (N.D. Ill. Dec. 14, 2000) (citing *Barnhill v. Flannigan*,

---

[7] The court notes that, in addition to the fact that Winsor's ineffective assistance of counsel claim was disposed of on independent and adequate state grounds, Winsor has also procedurally defaulted on this claim because of his failure to "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. at 1729.

42 F.3d 1074, 1078 (7th Cir. 1994)), Winsor's argument nevertheless fails for two reasons.

First, "before a petitioner can use ineffective assistance of counsel as cause for procedural default, 'he must first present this claim as an independent claim to the state courts either on direct appeal or in post-conviction proceedings.'" *Faircloth*, 2000 WL 184627, at *6 (citing *Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995)); *see also United States ex rel. Perez v. Shumate*, No. 98 C 7114, 2000 WL 1468329, at *2 (N.D. Ill. Aug. 31, 2000) ("[T]he Supreme Court has recently held that an ineffective assistance of appellate counsel claim advanced as cause can itself be procedurally defaulted if it has not been raised in state court.") (citing *Edwards v. Carpenter*, 529 U.S. 446, 450 (2000)). The Illinois Appellate Court, in its order affirming the dismissal of Winsor's post-conviction petition, stated that Winsor waived any claim as to the ineffective assistance of appellate counsel because he did not include it in his post-conviction petition. This finding of waiver constitutes an "independent and adequate state ground that bars federal habeas relief." Because the ineffective assistance of appellate counsel claim is barred, it cannot qualify as "cause" to justify procedural default.

Second, at the risk of addressing the merits of the ineffective assistance of counsel claim, the court notes that the Seventh Circuit has already decided that the mere fact that a petitioner's trial counsel and appellate counsel both worked as public defenders for the State of Illinois does not, without more, create an impermissible

conflict. *See Barnhill*, 42 F.3d at 1078. The court wrote:

> Barnhill has presented no actual conflict of interest which would be cause for appellate counsel's failure to raise trial counsel's ineffectiveness. Generally, an attorney's actual conflict of interest can be a sufficient cause to excuse a procedural default. This is especially true where the petitioner is represented by the same attorney at trial and on direct appeal, since the same attorney might be reluctant to raise issues on appeal that might suggest his ineffectiveness at trial. However, this risk is not present when one attorney represents the petitioner at trial and a different attorney represents the petitioner on appeal. That the two attorneys in this case both worked for the State of Illinois does not automatically suggest a conflict.

*Id.* at 1077-78 (internal citations and footnotes omitted). Other than the fact that they were both public defenders, Winsor has not offered the court any evidence to suggest an impermissible conflict of interest.

Because Winsor has neither established "cause" nor introduced new evidence to establish his "actual innocence," the court cannot entertain his ineffective assistance of trial counsel claim.

## CONCLUSION

For the foregoing reasons, Winsor's motions for substitution (Docs. 40-1, 42-1) are granted. His motion for appointment of counsel (Doc. 32-1) is denied, and his petition for habeas corpus is denied. (Doc. 42-2.) This case is dismissed.

ENTER:

Dated: September 26, 2001

REBECCA R. PALLMEYER
United States District Judge

18